**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JAN M. GAWLIK,
  Plaintiff,

   v.          Case No. 3:23-CV-772(OAW)

ANGEL QUIROS, et al.,
  Defendants.

**<u>INITIAL REVIEW ORDER RE: AMENDED COMPLAINT</u>**

Self-represented plaintiff Jan M. Gawlik has filed an Amended Complaint[1] naming fifteen defendants in their individual and official capacities: Commissioner Angel Quiros, Assistant Attorney General Steven Strom, Warden Jennifer Reis, Attorney General William Tong, Lieutenant Saas, Property Officer Goncalvus, Property Officer Szast, Officer Buckland, District Administrator Nick Rodriguez, Deputy Warden Carlos Nunez, Captain Israel Rodriguez, Lieutenant Mingrino, Officer Angell, Captain Distasi, and Lieutenant Mazurek.  He purports to bring this action under 42 U.S.C. § 1983 to redress alleged violations of the Americans with Disabilities Act ("ADA"); Section 504 of the Rehabilitation Act of 1973 ("Section 504"); 42 U.S.C. §§ 1985, 1986, and 12202; 18 U.S.C. §§ 245 and 249; the Mandela Act; and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution.  ECF No. 17 at 2.  He seeks damages as well as declaratory and injunctive relief.

---

[1] Plaintiff moved for an extension of time to file an amended complaint, *see* ECF No. 15, which the court hereby grants.  The courts accepts and reviews the amended complaint filed at ECF No. 17.

1

The Prison Litigation Reform Act ("PLRA") requires federal courts to review complaints brought by prisoners seeking relief against a government entity, or against an officer or employee of a government entity.  28 U.S.C. § 1915A(a).  Upon review, the court must dismiss the complaint, or any portion thereof, that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune therefrom.  *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).  Accordingly, the court has conducted such an initial review of the amended complaint.

## I.    FACTUAL BACKGROUND

This ruling includes a mere summary of facts from Plaintiff's amended complaint,[2] as necessary for context.

This case arises from two "shakedowns" (cell searches) conducted while Plaintiff was confined at Cheshire Correctional Institution ("Cheshire") in June 2022 and March 2024.  ECF No. 17 ¶ 18.  Both times, after Plaintiff was in the gymnasium with all the other inmates housed in his cellblock, he returned to his cell to find his legal documents and his religious iconography either destroyed on the floor of his cell or confiscated.  During the 2022 shakedown, personal toiletries (which were all purchased at the

---

[2] The amended complaint is 87 pages, and an additional 182 pages of exhibits are appended thereto. Plaintiff's factual allegations comprise 321 paragraphs, some spanning several pages and many including legal conclusions, case citations, and argument.  Clearly, this pleading fails to comply with Federal Rule of Civil Procedure 8, which requires that a complaint be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Cunningham v. Lupis*, No. 3:21cv273 (SALM), 2022 WL 561352, at *2 (D. Conn. Feb. 24, 2022) (noting that inclusion of argument and case citations in a complaint render it "a prime candidate for dismissal pursuant to Rule 8").  Given Plaintiff's pro se status, the court does not now dismiss this case, but Plaintiff is on notice to comply with the Rules.

commissary and were not contraband) and family photos also were confiscated.

Officers Buckland and Angell conducted the June 2022 search.  Two years earlier, Plaintiff had sued Officer Buckland for assault and battery.[3]  *Id.*  Prior to the search, Lieutenant Saas had "regularly taunted" Plaintiff about filing lawsuits against staff, and particularly, Officer Buckland.  *Id.* ¶ 23.  Plaintiff believes Lieutenant Saas assigned Officer Buckland to search Plaintiff's cell to offer Officer Buckland a form of retaliation against him.  *Id.*  He alleges Officer Buckland destroyed many documents needed for a petition for certiorari he filed with the Supreme Court of the United States.  *Id.* ¶¶ 44–46.

When Plaintiff questioned Lieutenant Saas about the removal of all of his property, Lieutenant Saas said only that Plaintiff had an excessive amount of legal materials in his cell.  *Id.* ¶ 27.  Plaintiff stated that he needed all of his legal materials because he was then simultaneously litigating multiple cases in federal court.[4]  *Id.* ¶ 28.  Lieutenant Saas said they would review the legal documents to verify that they related to pending actions. *Id.* ¶ 30.  Plaintiff also asked for a receipt describing the confiscated property, but Lieutenant Saas said that they did not issue receipts.  *Id.* ¶¶ 29–30.

Plaintiff alleges that from March 2015 through June 2022, he was permitted to retain all of his legal materials in his cell regardless of their volume, which was not problematic during any prior cell search, but it became so after bringing a federal lawsuit

---

[3] *See Gawlik v. Semple*, No. 3:20-CV-564(OAW).

[4] Plaintiff states that, at the time of the search, he was litigating four cases in this district, two cases at the United States Court of Appeals for the Second Circuit, a petition for certiorari at the Supreme Court of the United States, and a habeas action in state court.  ECF No. 17 ¶¶ 33, 37.  The Amended Complaint, however, lists five pending cases in the District of Connecticut, two in the Southern District of New York, and one habeas corpus action in state court.  *Id.* ¶ 286.

against Cheshire staff.  *Id.* ¶ 31.  Property Officer Szast could not explain Plaintiff's previous right to possess his legal documents in his cell.  *Id.* ¶ 60.  Plaintiff alleges the denial of his legal materials interfered with his ability to litigate his cases.  *Id.* ¶¶ 38–39.[5]

It took Plaintiff over two weeks to purchase replacement toiletries, during which time adequate hygiene was impossible.  *Id.* ¶¶ 51, 53.  And for the next several months, Plaintiff unsuccessfully sought the return of his legal documents.  On June 28, 2022, Plaintiff requested return of his property via Property Officer Goncalvus.  *Id.* ¶ 58.  On July 5, 2022, Property Officer Szast stated Plaintiff could not have his property because of its volume.  *Id.* ¶ 59.  On June 30, 2022, Plaintiff submitted an inmate request to Commissioner Quiros complaining about the confiscation of his legal documents.  *Id.* ¶¶ 63–65.  Commissioner Quiros did not respond.  *Id.* ¶ 68.  On July 8, 2022, Plaintiff stopped Deputy Warden Nunez when he was touring the housing unit and discussed the confiscation of his property; Deputy Warden Nunez said he would look into the matter, but did not.  *Id.* ¶ 69–71.  On July 11, 2022, Plaintiff followed up with an inmate request to Deputy Warden Nunez and Captain Rodriguez, but got no response.  *Id.* ¶¶ 72–76. On July 5, 2022, Plaintiff sent a letter to Attorney General William Tong complaining about the allegedly retaliatory search of his cell and confiscation of his property, but AG Tong did not reply.  *Id.* ¶¶ 95–102.  On July 18, 2022, Plaintiff asked the block officer to call Property Officer Goncalvus, but Property Officer Goncalvus was busy and could not

---

[5] For instance, Petitioner's state habeas trial was scheduled for November 2022, but he required a continuance because he did not have certain transcripts to review in preparation therefor.  *Id.* ¶ 35.

accommodate him that day. *Id.* ¶ 182. Plaintiff wrote to Property Officer Goncalvus explaining his urgent need for the documents and sought intervention by Captain Nunez but received no response from either officer. *Id.* ¶¶ 184–85. On July 27, 2022, Plaintiff submitted a similar request to Property Officer Szast but, again, received no response. *Id.* ¶ 186. On September 9 or 12, 2022, Plaintiff asked Property Officer Goncalvus for two boxes of his legal materials to prepare for his upcoming habeas trial. *Id.* ¶¶ 103, 196. On September 16, 2022, Property Officer Szast only offered Plaintiff the two boxes if he would return two other boxes from his cell. *Id.* ¶¶ 105–06, 197–98.[6] Plaintiff disagreed with Property Officer Szast's assertion that legal materials must fit within six cubic feet allotted for property within a cell. *Id.* ¶¶ 107–09. Plaintiff was informed multiple times that his use of the grievance process could be restricted if he did not cease filing duplicative grievances, and repetitive grievances on the same issue as prior pending grievances. *Id.* ¶¶ 235–239. Plaintiff previously sued Assistant Attorney General Steven Strom for retaliation.[7] *Id.* ¶ 80. Plaintiff speculates that AAG Strom knows of and was involved in the confiscation of his documents, *id.* ¶¶ 89, 91–93, and suggests related retaliation.[8]

On October 27, 2022; November 22, 2022; and December 8, 2022, Lieutenant Mingrino supervised cell searches in Plaintiff's housing unit, *id.* ¶ 117, and ordered officers

---

[6] Cheshire's personal property policy is unclear. Plaintiff asserts inmates are permitted one banker's box of personal property, exclusive of legal documents. He states several officers told him that he could not have all his legal documents (15 banker's boxes) in his cell at once for safety reasons, but that he could access them as needed.

[7] *See Gawlik v. Strom*, No. 3:21-cv-743(OAW).

[8] Plaintiff alleges this court found that AAG Strom violated his First Amendment rights, but this is untrue. *Id.* ¶ 83; *see Gawlik v. Strom*, No. 3:21-cv-743(OAW), 2023 WL 5979992, at *8 (D. Conn. Sept. 14, 2023) (granting motion to dismiss retaliation claim against AAG Strom based on qualified immunity).

to conduct an "extra" search of Plaintiff's cell, and to confiscate and scatter documents and property. *Id.* ¶ 118. Plaintiff alleges that there was no justification for the searches and that they were conducted to harass and retaliate against him. *Id.* ¶¶ 119–20.

On November 12, 2022, Officer Angell confiscated the unit's typewriter (which Plaintiff had permission to use), *id.* ¶ 126, stating, "This is what you get for filing a PREA complaint against me and suing staff members at Cheshire C.I." *Id.* ¶ 127. When Plaintiff complained that he had permission to use the typewriter, Officer Angell threatened to place him in administrative segregation. *Id.* ¶ 128. Plaintiff complained to a lieutenant touring the housing unit, but nothing was done. *Id.* ¶ 129. A few hours later, Officer Angell ordered Plaintiff to leave his cell so she could search it. *Id.* ¶ 130. Officer Angell confiscated boxes of legal documents and scattered their contents on the cell floor. *Id.* ¶ 132. The same day, Plaintiff sent an inmate request to Warden Reis threatening to hold her personally accountable if she did not resolve Officer Angell's retaliation. *Id.* ¶ 133.

On November 17, 2022, Plaintiff petitioned for certiorari to the Supreme Court and sent a copy to Defendant Strom as defense counsel. *Id.* ¶ 223. The documents arrived at the Supreme Court eleven days later. *Id.* ¶ 224. Plaintiff alleges, in conclusory fashion, that AAG Strom "continues to <u>contact</u> Cheshire Correctional Institute to cause damage to <u>all</u> the plaintiff[']s federal cases in various areas, <u>delay of mail, mail being lost</u>, etc., due to defendant/Strom in a pending lawsuit in: (<u>Gawlik v. Strom</u>)." *Id.* ¶ 227 (emphasis in original). Such action is disputed by mailroom staff. *Id.* ¶¶ 227–31.

In late December 2022, Plaintiff tested positive for COVID-19 and was moved to a single cell until he could be transported to a COVID unit in another facility. *Id.* ¶¶ 243,

245.  He had his property with him in the single cell until December 26, 2022, when it was placed in storage before his transfer.  *Id.* ¶ 246. This was contrary to the usual practice whereby inmates left their property in their cells while in the COVID unit.  *Id.* ¶ 247.  On January 3, 2023, the day after Plaintiff returned to Cheshire, he tried to retrieve his property from storage, but Property Officer Goncalvus did not let him get all the property that had been in his cell prior to his transfer, and she refused to issue a receipt for the property she retained.  *Id.* ¶ 249–251.

During a shakedown of North Block 1 on March 5, 2024, "under the jurisdiction of" Warden Reis, all of Plaintiff's legal documents were seized by Property Officer Szast, Captain Distasi, and Lieutenant Mazurek, and several were destroyed, along with religious articles.  *Id.* ¶ 261.  This occurred despite Captain Distasi telling Plaintiff that they were searching for drugs and not seizing property.  *Id.* ¶¶ 265–66.  Plaintiff demanded a receipt for his seized property but was ignored.  *Id.* ¶¶ 267, 270.  Property Officer Szast told him that his property had been stored in the property room but refused to allow him visual verification.  *Id.* ¶¶ 270–71.  Plaintiff reported this to the Connecticut State Police as theft of property, and was interviewed by a state trooper.  *Id.* ¶¶ 271–73. The following day, on March 6, 2024, Plaintiff was called to see Deputy Warden Nunez and Lieutenant Saas and was shown all of his legal documents spread on a table.  *Id.* ¶ 274.  They were willing to permit him to take six cubic feet of property, but Plaintiff again insisted he should be permitted to take all of it.  *Id.* ¶ 277.

## II.    DISCUSSION

The court turns first to those claims which can be summarily resolved.

### A.    ADA and Section 504

Plaintiff argues that he is disabled, and that Defendants discriminated against him in violation of the ADA and Section 504.  He also cites 42 U.S.C. § 12202, presumably for the proposition that the state is not immune from suit under the ADA.  *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court ... for a violation of this chapter.").  Because the standards under both statutes are the same, courts treat claims under the ADA and Section 504 identically.[9]  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).  To state a cognizable claim under either the ADA or Section 504, Plaintiff must allege facts establishing three factors: (1) that he is a qualified person with a disability, (2) that defendants are considered an entity subject to the statute, and (3) that he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities.  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Plaintiff alleges only that he is a qualified individual with a disability, in conclusory fashion.  All his asserted facts allege retaliation for filing lawsuits against correctional staff,

---

[9] The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while the ADA applies to all public entities, a distinction not relevant here.  *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008).

not because of his disability. As he does not allege that he was discriminated against because he is disabled, he cannot state a cognizable ADA or Section 504 claim. *See, e.g., Monger v. Connecticut Dep't of Transp.*, No. 3:17CV00205(JCH), 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017) ("Merely mentioning the state constitution, however, is not sufficient to state a claim upon which relief can be based."). Without substantive allegations to support these claims, they cannot survive initial review. Any such claims therefore are dismissed, and with them any claim under 42 U.S.C. § 12202.

### B. Federal Criminal Statutes

Plaintiff alleges Defendants violated two federal criminal statutes: 18 U.S.C. §§ 249 and 245. But violations of Title 18 cannot serve as the basis for a civil cause of action unless the specific statute includes an express or implied private right of action. *Guttilla v. City of New York*, No. 14-CV-156(JPO), 2015 WL 437405, at *11 (S.D.N.Y. Feb. 3, 2015) (citing *Cort v. Ash*, 422 U.S. 66, 79 (1975)). Sections 249 and 245 do not include such language. *See Ates v. United States*, No. 20-CV-4334(JS)(AYS), 2020 WL 6202672, at *4 (E.D.N.Y. Oct. 22, 2020) (collecting cases and concluding that 18 U.S.C. §§ 241, 245, and 249 "are criminal statutes and do not provide a private right of action."). Accordingly, any claims brought under 18 U.S.C. §§ 245 and 249 must be dismissed.

### C. 42 U.S.C. §§ 1985 and 1986

Plaintiff asserts claims under Sections 1985 (conspiracy to interfere with civil rights) and 1986 ("neglect to prevent"). ECF No. 17 at 2. But Section 1985 prohibits conspiracies only in specific contexts: subparagraph (1) prohibits conspiracies to prevent federal officers from performing their duties; subparagraph (2) prohibits conspiracies to

deter witnesses from participating in state or federal judicial proceedings; and subparagraph (3) prohibits conspiracies motivated by racial or otherwise class-based invidious discriminatory animus. *See Harnage v. Dzurenda*, No. 3:14-cv-885(SRU), 2014 WL 3360342, at *2 (D. Conn. July 9, 2014). Neither of the first two provisions is applicable to the present facts, and Plaintiff does not allege any class-based discrimination. Instead, he alleges that Defendants' actions were retaliation for his lawsuits against prison staff. Thus, Plaintiff fails to state a plausible Section 1985 claim.

Section 1986 provides no substantive rights; it merely provides a remedy for the violation of Section 1985. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part). Thus, a prerequisite for a Section 1986 claim is a cognizable 1985 claim. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). As Plaintiff has not stated a plausible Section 1985 claim, he cannot state a cognizable Section 1986 claim. Thus, the 1985 and 1986 claims are dismissed.

**D. Supremacy Clause**

Plaintiff alleges Defendants have violated his rights under the Supremacy Clause, which invalidates state laws that "interfere with, or are contrary to," federal law. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824). Plaintiff has not identified any state law or regulation that is preempted by federal law.[10] Thus, any Supremacy claim is dismissed.

---

[10] His only possible claim is based on a policy of the Department of Correction, which is discussed infra.

### E. **Mandela Act**

Plaintiff includes the Mandela Act in his list of claims but does not mention it in his statement of facts.  The court presumes Plaintiff refers to the United Nations Standard Minimum Rules for Treatment of Prisoners (also known as the Nelson Mandela rules).  But these rules are not a source of justiciable rights.  *Wainwright v. Medical Dep't Cuyahoga Cnty. Corr. Ctr.*, No. 1:17-CV-1621, 2018 WL 2077507, at *3 n.41 (N.D. Ohio May 4, 2018) (citing *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010).  Thus, any claims based on their violation are not plausible and must be dismissed.

### F. **First Amendment**

Turning to Plaintiff's more substantive claims, the amended complaint states multiple violations of Plaintiff's First Amendment rights.  He alleges unlawful retaliation, denial of access to courts, and violation of his right to free exercise of religion.  The court takes these in turn.

#### a. *Retaliation*

Plaintiff asserts retaliation claims based on searches of his cell in 2022 and 2024.  He first contends that, in 2022, Officers Buckland and Angell and Lieutenants Saas and Mingrino destroyed or confiscated some of his legal, religious, and personal items, or ordered others to do so, and that Property Officers Goncalvus and Szast refused to return his hygiene items or permit him to retain all his legal materials in his cell.  Later in 2022, Officer Angell again searched his cell and confiscated legal documents.  Plaintiff contends all of this was done because he sued prison staff.  Second, he alleges Property Officer Szast, Captain Distasi, and Lieutenant Mazurek searched his cell in 2024, seizing legal

materials (which they later refused to return) and destroying religious materials.[11]  Plaintiff also asserts a retaliation claim against Officer Angell for confiscating the unit typewriter in response to his filing complaints against her and other staff members at Cheshire.

To state a cognizable retaliation claim, Plaintiff must allege facts establishing three elements: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted).

Filing a lawsuit is a protected activity.  *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995)).  Thus, Plaintiff meets the first element.

As to the second element, the adverse action must be serious enough to deter a similarly situated person of ordinary firmness from exercising their right to speech.  *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir. 2004).  Plaintiff alleges the denial of access to legal materials for his pending cases in his cell, and presumably typewriter access, has interfered with his ability to prosecute those cases.  For purposes of initial review only, the court assumes that Plaintiff sufficiently alleges an adverse action.

The third element requires Plaintiff to allege facts showing a causal connection between the adverse action and his protected activity.  Plaintiff alleges that for many years

---

[11] Plaintiff was told his property was removed because of its volume, but the court accepts for purposes of initial review that the 2024 search also was premised on his litigation against correctional staff.

before he filed lawsuits against correctional staff, he was permitted to have sixteen banker's boxes of property in his cell. ECF No. 1 ¶ 213. This far exceeded the six banker's boxes of property to which he now is limited. He also alleges that he was taunted about the lawsuit before his cell was searched in 2022, and that Officer Angell stated that the typewriter was removed because of Plaintiff's lawsuits against Cheshire staff. The court considers these allegations sufficient on initial review to plausibly allege the required causal connection for all the 2022 and 2024 seizures.

Plaintiff's retaliation claim will proceed against Defendants Buckland, Angell, Saas, Mingrino, Distasi, Mazurek, Goncalvus, and Szast for further development of the record.

### b. *Denial of Access to the Courts*

There are two ways that Plaintiff alleges Defendants deprived him of access to the courts. First, he alleges a constitutional deprivation in that some of his legal papers were confiscated and that he cannot have all his legal materials in his cell at all times. He also asserts a violation in DOC's policy of barring individuals from the grievance process if they have abused it.

#### i. *Access to Legal Materials*

To state a claim for denial of access to the courts, Plaintiff must assert non-conclusory allegations showing both that Defendants acted deliberately and maliciously, and that he suffered an actual injury. *Burroughs v. Petrone,* 138 F. Supp. 3d 182, 210 (N.D.N.Y. 2015). He must allege Defendants took, or were responsible for, actions that frustrated his efforts to pursue a nonfrivolous legal claim. *Brown v. Choinski*, No. 3:09-cv-1631(MRK), 2011 WL 1106232, at *5 (D. Conn. Mar. 23, 2011) ("[A] plaintiff cannot

prevail on a right of access to courts claim unless he or she can show that a defendant's conduct deprived him or her of an opportunity to press some nonfrivolous and arguable legal claim in court."). The actual injury requirement "is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The Supreme Court has restricted the types of claims to direct appeals of criminal convictions, habeas petitions, and "'civil rights actions'—i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" *Id.* (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original). Plaintiff alleges that the cases at issue were a state habeas action and various civil rights actions. Thus, the court assumes, for purposes of initial review only, that Plaintiff has identified cases that can give rise a claim for denial of access to the courts.

To allege an actual injury, Plaintiff must identify an action in which he was hindered from pursuing a meritorious claim. *Id.* at 351. A delay in litigation does not meet this standard. *See Lebron v. Armstrong*, 289 F. Supp. 2d 56, 61 (D. Conn. 2003) (concluding that delay in litigation does not constitute actual injury under *Lewis*). Thus, Plaintiff's allegation that he had to ask habeas counsel for a continuance is not an actual injury.

Although Plaintiff alleges he could not file a proper petition for certiorari because he did not have all the necessary materials, his petition was accepted and docketed. *See* ECF No. 17 ¶¶ 157–59. Plaintiff has no information on why the petition was denied, and therefore cannot plausibly state the denial was attributable to Defendants' conduct. Nor does he state the grounds asserted in the petition. *See Johnson v. McKay*, No. 9:14-cv-

803 (BKS/TWD), 2015 WL 1735102, at *4 (N.D.N.Y. Apr. 16, 2015) (dismissing as conclusory the argument that the plaintiff suffered injury because he lost his appeal where plaintiff alleged no information to show that the appeal was nonfrivolous).

Further, although Plaintiff repeatedly alleges he could not effectively litigate his pending federal cases without having his legal materials in his cell, he does not allege that any case was dismissed, identify any hindrance to his efforts to pursue his claims, or show prejudice in any existing action. The Supreme Court has rejected the idea that a prisoner must be afforded the means to effectively litigate a filed case, *Lewis,* 518 U.S. at 354, and so absent any clear assertion of a dispositive effect to his position therein, mere difficulty in vindicating his claims cannot show a constitutional injury.

Finally, courts have found it reasonable to limit the quantity of legal materials inmates are permitted to retain in their cells. "While it is true that under the Constitution a correctional facility must provide an inmate with meaningful access to the courts, the mere limitation of access to legal materials, without more, does not state a constitutional claim . . . ." *McAllister v. Goord*, No. 9:06-CV-0442(TJM)(RFT), 2009 WL 5216953, at *3 (N.D.N.Y. Dec. 30, 2009) (emphasis and internal citation omitted); *see also Amaker v. Fisher*, No. 07-CV-0279(SR), 2010 WL 2572936, at *5–6 (W.D.N.Y. June 23, 2010) (noting that "courts have found limitations on the quantity of legal materials inmates are permitted to possess to be reasonable" and dismissing claim where plaintiff's deprivation of legal materials resulted from his own "refusal to cull one draft bag of legal materials from his five draft bags of legal materials"), *aff'd sub nom. Amaker v. Fischer*, 453 F. App'x 59 (2d Cir. 2011).

15

Accordingly, Plaintiff fails to state a plausible claim for denial of access to the courts.  Any such claims are dismissed.

*ii.  Challenge to Policy Regarding Grievance Restriction*

Plaintiff argues that Administrative Directive 9.6(5)(l), the provision authorizing restriction of an inmate's right to file grievances, is unconstitutional because it infringes upon his right to seek redress in the courts.  ECF No. 17 ¶¶ 235–39.

"Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials.*"  Baker v. Weir,* No. 16 Civ. 1066 (JAM), 2016 WL 7441064, *2 (D. Conn. Dec. 27, 2016); *see also BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002) ("We thus made explicit that 'the right to petition extends to all departments of the Government,' and that '[t]he right of access to the courts is . . . but one aspect of the right to petition.'" (quoting *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)) (alterations in original).  However, the Supreme Court has never held that the Constitution requires state prisons to have formal grievance procedures.  Similarly, in *Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018), the Second Circuit rejected a state prisoner's constitutional claim regarding prison grievance procedures, noting the "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right."  *Id.* at 13 (summary order).  It held that neither state policies nor state statutes "create federally protected due process entitlements to specific state-mandated procedures."  (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks omitted).  As there is no

constitutional right to prison grievance procedures, Plaintiff fails to allege a plausible constitutional basis for his challenge to the directive.  *See Lopez v. McGill*, No. 3:08-CV01931(CSH), 2009 WL 179787, at *6 (D. Conn. Jan. 21, 2009) ("[P]laintiff's claim that the grievance restriction directly limits his First Amendment right to petition the government for redress of grievances fails as a matter of law").

Thus, Plaintiff's challenge to the directive must be dismissed.

### G. *Free Exercise*

Plaintiff contends that by ripping up his religious pictures, Officer Buckland violated his First Amendment right to freely practice his religion.  He also alleges he complained to AG Tong that Lieutenant Saas directed Property Officer Goncalvus to confiscate the religious literature he used for daily prayer.[12]  ECF No. 17 ¶¶ 96–97.  Plaintiff alleges he would pray daily, *id.* ¶¶ 25, 121, presumably in front of the shrine he created by attaching religious pictures to the wall.

The First Amendment Free Exercise Clause requires that government officials respect, and avoid interference with, the religious beliefs and practices of the people.  *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  Prisoners "retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).  "In the prison context, however, 'the right to free exercise of religion' is balanced against 'the interests of prison officials charged with complex duties arising from administration of the penal system.'"  *Kravitz v. Purcell*,

---

[12] Although Plaintiff does not include this as a claim against Lt. Saas or Property Officer Goncalvus, the court liberally construes the amended complaint to assert this claim.

87 F.4th 111, 127–28 (2d Cir. 2023) (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).  Thus, infringement of the right to free exercise is permissible where it is "reasonably related to legitimate penological interests."  *Id.* (quoting *Benjamin*, 905 F.2d at 574).  In assessing a free exercise claim, courts ask "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials . . . furthers legitimate penological objective[s]'" *Id.* at 128 (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)) (internal quotation marks omitted).

There is no allegation AG Tong had anything to do with the shakedowns, thus this claim must be dismissed as to him.  But Plaintiff alleges the items he used for prayer were wrongfully destroyed or confiscated by Officer Buckland, as ordered by Lt. Saas. The court finds these allegations sufficient to survive initial review as to these two defendants. *See Brisman v. Graham*, No. 915CV0712LEKDEP, 2015 WL 13821095, at *8 (N.D.N.Y. Aug. 28, 2015) (finding that a "First Amendment free exercise claim . . . arising from the destruction of [the plaintiff's] religious property survives *sua sponte* review and requires a response.") (citing *Hudson v. Palmer*, 468 U.S. 517, 547 n.13 (1984)) ("A prisoner's possession of . . . personal property relating to religious observance, such as a Bible or a crucifix, is surely protected by the Free Exercise Clause of the First Amendment.").

### H.  Eighth Amendment Deliberate Indifference Claim

Plaintiff contends depriving him of all toiletries and hygiene items for two weeks constituted cruel and unusual punishment in violation of the Eighth Amendment.  He must

meet two requirements to state a plausible claim for unconstitutional conditions of confinement. First, objectively that "the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities . . . ." *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotation marks omitted). Second, subjectively that "the defendant official acted with a sufficiently culpable state of mind . . ., such as deliberate indifference to inmate health or safety." *Id.* (quoting *Walker*, 717 F.3d at 125) (alteration in original) (internal quotation marks omitted). "Conditions of confinement inflict cruel and unusual punishment when they result 'in unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measure' of life's necessities.'" *Id.* (quoting *Anderson v. Coughlin*, 757 F.2d 33, 34–35 (2d Cir. 1985)) (internal quotation marks omitted). Whether incarceration under restrictive conditions violates the Eighth Amendment depends on the duration and character of the restrictions. *See Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015); *see also Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (reaffirming that the Eighth Amendment inquiry focuses on the "severity and duration" of the restrictive conditions, not any resulting injury).

Courts considering similar claims have held that temporary deprivations of hygiene items do not constitute deprivations of basic human needs to satisfy the objective component of the Eighth Amendment deliberate indifference standard. *See Trammell v. Kane*, 338 F.3d 155, 165 (2d Cir. 2003) (deprivation of "toiletries for approximately two weeks—while perhaps uncomfortable" did not violate the Eighth Amendment); *but see Wells v. Colvin*, No. 16-CV-6850-FPG, 2019 WL 4688745, at *4 (W.D.N.Y. Sept. 26,

2019) (deprivation of toiletries for longer periods, such as from over two weeks to a month, can violate inmate's constitutional rights).

Plaintiff alleges it took him over two weeks to replace his toiletries.  While courts in this circuit have found similar deprivations to fall short of a constitutional violation, Plaintiff points out that his toiletries were confiscated during the COVID-19 pandemic, when attention to hygiene was a significant first line of defense against infection.  The court finds this to present a sufficiently serious deprivation for purposes of this initial review.

The court also finds the subjective element to be satisfied upon initial review.  Plaintiff alleges the 2022 search had no penological purpose and was intended to harass him in retaliation for pursuing legal claims against correctional staff.  Given the importance of hygiene in combatting the Coronavirus, and the particular difficulty prisons had in stopping its spread, the court finds Plaintiff has alleged sufficient facts to carry this claim past initial review.  This claim may proceed against Officers Buckland and Angell, who conducted the 2022 shakedown, and Officers Goncalvus and Szast, who did not return Plaintiff's hygiene items despite numerous requests.

## I.   Fourteenth Amendment Due Process Claims

Plaintiff alleges Lt. Saas violated his right to due process by depriving him of his personal property and failing to issue a receipt therefor.  Even assuming there is a policy requiring issuance of receipts for confiscated property, "claims involving the improper adherence to proprietary facility policies are incognizable under § 1983; only rights secured by the Constitution and federal law are actionable under § 1983."  *Ahlers v. Nowicki*, No. 9:12-CV-0539(DNH/RFT), 2014 WL 1056935, at *4 (N.D.N.Y. Mar. 18,

2014) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (holding that violations of state procedural requirements are not cognizable claims under section 1983).   Accordingly, the failure to issue receipts cannot provide a basis for Plaintiff's Fourteenth Amendment claim.

The Supreme Court has held that a procedural due process claim under the Fourteenth Amendment for the negligent or intentional deprivation of property is not cognizable under section 1983 where there exist adequate state law post-deprivation remedies.  *See Hudson v. Palmer*, 468 U.S.517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981); *see also Attallah v. New York College of Osteopathic Medicine,* 643 F. App'x 7*, *9–*10 (2d Cir. 2016).   Connecticut law provides post-deprivation remedies for individuals claiming unauthorized deprivations of property by state officers.  *See, e.g., Sherman v. Corcella*, No. 3:19-cv-1889(CSH), 2020 WL 4043178, at *17 (D. Conn. July 16, 2020); *Longmoor v. Nilsen*, 329 F. Supp.2d 289, 298 (D. Conn. 2004); *see also* Conn. Gen. Stat. § 4-141, et seq. (providing that claims for payment may be presented to the Connecticut Claims Commission); DOC Administrative Directive 9.6(16)(B) (providing an administrative remedy for lost or destroyed property).   As Plaintiff has adequate post-deprivation remedies for any unrecovered personal property, any claims based on the loss thereof are not cognizable under the Fourteenth Amendment and are dismissed.

## J.  **Fourteenth Amendment Equal Protection Claim**

Plaintiff generally alleges that Defendants' actions deprived him of equal protection of the laws in violation of the Fourteenth Amendment.   The Equal Protection Clause protects individuals from invidious discrimination and requires similar state treatment of

similarly-situated persons. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). To state an equal protection claim, Plaintiff must allege facts showing that he was treated differently from similarly-situated inmates and that the difference in treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person.'" *Diesel v. Town of Lewisburo*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)); *see also Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) ("[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals . . . .'").

While Plaintiff alleges he was denied his legal materials in his cell in retaliation for suing prison staff, he fails to identity a similarly-situated person who was treated differently, *i.e.,* an inmate who could have over six boxes of legal materials in their cell. Thus, Plaintiff fails to state a plausible Fourteenth Amendment equal protection claim.

Plaintiff also references the Fifth Amendment in connection with his equal protection claim. The Fifth Amendment Due Process Clause, however, applies to federal, not state, inmates. *See Jackson v. Walker*, No. 3:22-CV-1951(OAW), 2022 WL 16573562, at *3 (D. Conn. Nov. 1, 2022) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 69 n.3 (2d Cir. 2009)). As a state inmate, Plaintiff cannot assert a Fifth Amendment claim.

Thus, any equal protection claims must be dismissed.

### K.  Fourth Amendment Privacy Claims

Plaintiff alleges that Defendants Saas and Buckland violated his Fourth Amendment right to privacy by reading his legal documents to ascertain whether they

pertained to pending cases. In the prison context, the Fourth Amendment affords only a limited right to *bodily* privacy. *See Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) ("'[M]aintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy.'") (quoting *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir.1992)) (internal quotation marks omitted). The Fourth Amendment does not, however, extend to protect Plaintiff's legal materials. *See DiGuiseppe v. Ward*, 698 F.2d 602, 605 (2d Cir. 1983) (concluding that prison officials were justified in seizing and reading prisoner's diary where entries contained information about participation in a prison riot); *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998) (finding in the context of an access-to-courts claim that the search of prisoner's law library desk and a crate containing legal materials was not unlawful because a prisoner has "limited rights to privacy"); *see also Mitchell v. Dupnik,* 75 F.3d 517, 523 (9th Cir. 1996) (finding a search of legal papers in a prisoner's cell to be constitutional). Here, the review of Plaintiff's legal materials (most of which, it appears, did not relate to claims against the correctional officers) was reasonably related to penological interests, and therefore did not unconstitutionally abridge Plaintiff's right to privacy. The Fourth Amendment privacy claim therefore is dismissed.

### L. Supervisory Liability

Commissioner Quiros, District Administrator Rodriguez, Warden Reis, Deputy Warden Nunez, and Captain Rodriguez are supervisory officials. The Second Circuit has held that "there is no special rule for supervisory liability," so Plaintiff "must plead and prove 'that each Government-official defendant, through the official's own individual

actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Mere awareness of an issue is no longer sufficient to state a claim for supervisory liability.[13]

### 1. *Commissioner Quiros*

Plaintiff alleges only that he sent inmate requests to Commissioner Quiros but received no response.  The fact that a supervisory official did not act in response to an inmate request is insufficient to establish that official's personal involvement.  Indeed, the facts do not even show that Commissioner Quiros ever saw the requests.  *See Delee v. Hannigan*, 729 F. App'x 25, 32 (2d Cir. 2018) (affirming the dismissal of a supervisory liability claim based on the supervisor's failure to respond to an inmate's letter); *see also Young v. Choinski*, 15 F. Supp. 3d 172, 190 (D. Conn. 2014) (finding in the context of an Eighth Amendment claim that the failure of a prison official to respond to an inmate's request is insufficient to show that official's personal involvement).  Any claims against Commissioner Quiros therefore are dismissed.

### 2. *District Administrator Rodriguez*

Plaintiff alleges that District Administrator Rodriguez responded unfavorably to a Level 2 grievance appeal in February 2023.  *See* ECF No. 1 ¶¶ 147–49.  The fact that Plaintiff disagrees with or disapproves of a grievance response does not state a cognizable claim.  *See Schlosser v. Manuel*, No. 3:19-cv-1444(SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance

---

[13] Plaintiff relies on supervisory liability caselaw as it existed before *Tangreti*.  ECF No. 17 ¶ 293.

procedures, to receive a response to a grievance, or to have a grievance properly processed."). Thus, the claims against District Administrator Rodriguez are dismissed.

### 3. *Warden Reis*

Plaintiff assumes that Warden Reis was responsible for the confiscation of his property but alleges only that she ordered searches of the entire facility. Plaintiff alleges no facts suggesting that Warden Reis ordered that his property be confiscated, or that she was even aware of the confiscated property until she reviewed Plaintiff's grievance. The court cannot invent allegations to support Plaintiff's claims. Thus, any claim against Warden Reis concerning the confiscation of Plaintiff's property is dismissed.

Plaintiff also asserts a claim against Warden Reis regarding her responses to his grievances. In July 2022, Plaintiff filed grievances concerning the confiscation of his property. In her responses, Warden Reis addressed the limitation on the volume of property Plaintiff was permitted to retain in his cell but did not address his claim of deprivation of all hygiene items. As Warden Reis was made aware of the allegedly unwarranted seizure of hygiene items and took no action to rectify the action, the court will permit the Eighth Amendment claim to proceed against Warden Reis, but only as to the toiletries.

In January 2023, Warden Reis responded to a grievance regarding Officer Angell's confiscation of the unit typewriter and the shakedown of Plaintiff's cell in November 2022. *See* ECF No. 1 ¶¶ 135–38. Plaintiff contends her response was insufficient because Warden Reis determined Plaintiff's claim could not be substantiated in suggesting that Officer Angell's statement showed retaliation via the confiscation and search. The only

evidence Plaintiff offered was surveillance footage which lacked an audio component. The fact that Plaintiff was not satisfied with Warden Reis' responses to his various grievances is insufficient to state a claim against Warden Reis.  These claims therefore are dismissed.

### 4.  *Deputy Warden Nunez*

Plaintiff alleges that he spoke with Deputy Warden Nunez about the confiscation of his property in July 2022.  ECF No. 17 ¶ 70.  In that conversation, Plaintiff emphasized his request for the return of his legal documents.   Plaintiff further alleges that Deputy Warden Nunez agreed to look into the matter but did not do so.  *Id.* ¶ 71.  Because it is unclear that limiting  personal property housed with an inmate is a constitutional violation, the failure to correct that issue cannot be a constitutional violation.[14]   Thus, Plaintiff's claim against Deputy Warden Nunez as to the confiscated legal materials is dismissed.

Depriving Plaintiff of toiletries, however, might constitute a constitutional violation, as discussed supra.  Since it appears Plaintiff alerted Defendant Nunez to his confiscated personal property (legal materials and toiletries), but Defendant Nunez failed to address the potential violation, the Eighth Amendment claim for denial of hygiene items will proceed against Defendant Nunez for further development of the record.

### 5.  *Captain Rodriguez*

The only conduct attributed to Captain Rodriguez is his alleged failure to respond to a request directed to him (and Depute Warden Nunez).  ECF No. 17 ¶¶ 73–76.  But as

_____

[14] The court also notes that Plaintiff's only evidence for Defendant Nunez's inaction is that he did not receive the outcome he wanted, *i.e.,* his legal materials were not returned to his cell.  This speculation cannot form the basis of a claim;  moreover, Plaintiff admits he was told several times he could only retain six cubic feet of property in his cell.  Thus, it appears that something done about his request.

explained supra, merely sending an inmate request to a supervisor is insufficient to show personal involvement.  Thus, any claims against Captain Rodriguez are dismissed.

### M. *Claims Against AAG Strom and AG Tong*

Plaintiff inaccurately recounts the claims he is asserting against AAG Strom in another lawsuit, incorrectly cites evidence claiming that AAG Strom was involved in confiscating his legal documents, and concludes AAG Strom was responsible for such confiscation.  ECF No. 17 ¶¶ 84–94.  Plaintiff also asserts a second claim against AAG Strom based on an unsupported allegation that he "continues to <u>contact</u> Cheshire Correctional Institute to cause damage to <u>all</u> the plaintiff[']s federal cases in various areas, <u>delay of mail, mail being lost</u>, etc., due to defendant/Strom in a pending lawsuit in: (<u>Gawlik v. Strom</u>)."  *Id.* ¶ 227 (emphasis in original).  As Plaintiff's allegations against AAG Strom are based on unsupported conjecture, any claims against AAG Strom are dismissed.

The only allegation as to AG Tong is that he failed to respond to a July 5, 2022, letter Plaintiff sent, complaining about the allegedly retaliatory search of his cell and the confiscation of his property.  ECF No. 1 ¶¶ 95–102.  Again, as explained above, sending a letter to a supervisory official is insufficient to state a plausible claim.  *See Delee*, 729 F. App'x at 32.   The claim against Attorney General Tong therefore is dismissed.


### III.  <u>CONCLUSION</u>

For the reasons discussed herein, it hereby is **ORDERED AND ADJUDGED** as follows:

27

1. The following claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1):

   a. All ADA and Section 504 claims;

   b. the Fourteenth Amendment due process and equal protection claims;

   c. the Fifth Amendment claims;

   d. the Fourth Amendment privacy claims;

   e. the access to courts claim;

   f. all claims against Commissioner Quiros, District Administrator Rodriguez, Captain Rodriguez, AAG Strom, and Attorney General Tong;

   g. all claims except the Eighth Amendment claims against Warden Reis and Deputy Warden Nunez;

   h. the Supremacy Clause claim;

   i. the claims for violation of 18 U.S.C. §§ 245 and 249;

   j. all claims under 42 U.S.C. §§ 1985 and 1986; and

   k. any claims under the Nelson Mandela Rules.

2. The case will proceed on the following claims:

   a. First Amendment retaliation against Defendants Buckland, Angell, Saas, Mingrino, Distasi, Mazurek, Goncalvus, and Szast.

   b. Eighth Amendment deliberate indifference (deprivation of toiletries) against Defendants Buckland, Angell, Goncalvus, Szast, Reis, and Nunez.

   c. First Amendment Free Exercise against Defendants Buckland and Saas.

3. As Plaintiff paid the filing fee to commence this action, he is directed to effect service of the Amended Complaint on Defendants Buckland, Angell, Saas, Mingrino, Distasi, Mazurek, Goncalvus, Szast, Reis, and Nunez in their individual and official capacities, in accordance with Federal Rule of Civil Procedure 4, **on or before February 18, 2025.**

4. Plaintiff further is directed to file completed returns of service **on or before March 18, 2025.** Plaintiff is cautioned that failure to timely file executed returns of service may result in the dismissal of claims against any defendant who has not been properly served and for whom an executed return of service is not returned.

5. The Clerk of Court is respectfully instructed to send a copy of this order to Plaintiff, to the Office of the Attorney General, and to the Department of Correction Office of Legal Affairs. The Clerk also is asked to please send a copy of the amended complaint to the Office of the Attorney General, and to the Department of Correction Office of Legal Affairs.

6. Defendants shall file their response **within sixty (60) days** from the date waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited in the amended complaint. They also may include all additional defenses permitted by the Federal Rules of Civil Procedure.

7. Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **on or before June 18, 2025.** Discovery requests are not to be

filed with the court.

8. All motions for summary judgment shall be filed **on or before July 18, 2025.**

9. Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion **within twenty-one (21) days** of the date such motion was filed. If no response is filed, or if the response is not timely filed, the dispositive motion can be granted absent objection.

10. Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendant's counsel by regular mail. In addition, Plaintiff must serve copies of all documents by regular mail on any defendant who does not participate in electronic filing.

11. The Clerk is asked to please enter on the docket the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates, and to please send a copy of the same to Plaintiff.

12. **Change of Address**. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff

has more than one pending case, he should indicate all the case numbers in

the notification of change of address.  Plaintiff should also notify Defendants or

counsel for Defendants of his new address.


**IT IS SO ORDERED** at Hartford, Connecticut, this 18th day of November, 2024.

_____/s/_____

Omar A. Williams
United States District Judge